**HAVERSTICK v BEAVER et**

Ohio Appeals, 2nd Dist, Greene Co

No 466. Decided May 8, 1941

# 364

Marcus Shoup, Xenia, for plaintiff-appellee.

Smith, McCallister & Gibney, Xenia, for defendant-appellant.

## OPINION

By GEIGER, PJ.

This matter is before this Court on appeal on questions of law and fact from a judgment rendered against the defendants-appellants, Charles I. Beaver, et al., in the Court of Common Pleas of Greene County, Ohio.

It is alleged in the petition that on the 22nd day of November, 1939, the plaintiff executed an option agreement with the defendant granting to him the right to purchase a certain tract of real estate owned by the plaintiff in Beaver Creek Township, Greene County, Ohio; that on the 1st of April, 1940, she executed a deed for the real estate described in said option; that it was the intention of the plaintiff as seller and the defendant as buyer that said plaintiff was to convey a tract of land owned by the plaintiff in Beaver Creek Township lying on the north side of the Dayton-Xenia Highway, which tract contains 73.97 acres for which the defendant agreed to pay $7100; that due to an error in the execution of said option agreement as well as in the execution of the deed, a small strip of land containing 4.49 acres lying on the south side of the highway was erroneously included which was a mutual mistake and not intended to be included in the conveyance as made; that it was her belief that the 4.49 acres erroneously included in the conveyance to the defendant was conveyed to her daughter on June 15, 1939, prior to the negotiations with the defendant; that said 4.49 acres was a part of a tract of 95.09 acres conveyed to her by deed made in 1883; that she has demanded that said defendant correct the mistake but he refuses to do so; that the other parties defendant claim to have a lien by virtue of a mortgage on the entire premises described. Plaintiff asks that the deed be so reformed as to describe the premises correctly.

The defendant answers admitting the giving of the option and of the deed for the real estate described in the petition. He admits that it was the intention of the plaintiff as seller and the defendant as buyer that said plaintiff was to convey to the defendant a tract of land owned by the plaintiff; that a tract consisting of 4.49 acres lying on the south side of the highway was included in the metes and bounds described in the deed. Defendant says that the option states that there is to be conveyed 78.46 acres of land "all of which lies on the north side of the Dayton-Xenia Highway". That plaintiff assured defendant that the acreage was correct and that a survey was not necessary. Defendant says that he paid $7100 for 78.46 acres pursuant to the option and that he was conveyed

this amount and that 4.49 acres is situated on the south side of the pike and that defendant is willing to accept the property on the south side of the pike as a part of the 78.46 acres that was to be conveyed to him; that plaintiff has demanded a re-conveyance of the 4.49 acres, but has been unwilling to reimburse the defendant for the difference between the 78.46 acres which he bought and paid for and 73.56 acres; that he is willing to re-convey the said 4.49 acres to the plaintiff for the sum of $400.00. He prays that the petition be dismissed or that the defendant be reimbursed proportionately if said 4.49 acres are to be re-conveyed to plaintiff. The other defendants answer setting up the fact that they had loaned $6000 to Charles I. Beaver and wife upon a mortgage covering the entire acreage described in the option and deed.

For reply plaintiff denies that she assured defendant that there was in fact 78.46 acres on the north side of the highway or that she informed the defendant a survey was not necessary but that on the other hand the defendant stated that he did not want a survey made as he was buying all the land on the north side of the road for the purpose of a subdivision.

A motion being made by the defendant for separate finding of facts and conclusions of law, the court did so and embodied same in the entry.

The entry of December 18, 1940, was to the effect that it was the intention of the plaintiff to sell and that intention of the defendant to buy the land lying north of the highway and that the description in the deed as received by the defendant was a mistake on the part of the scrivener and that Beaver had full knowledge prior to the completion of the transaction that the tract of land on the north side did not contain 78.46 acres but did in fact contain 73.56 acres and that with this full knowledge he completed the transaction without notice to the plaintiff and that the plaintiff is entitled to have the deed corrected omitting the tract of 4.49 acres lying south of the Dayton Pike. The Court orders that the mortgage lien cover the tract on both sides of the highway; that the defendant convey the 4.49 acres to the administrator of the deceased plaintiff and that the order shall operate as such conveyance.

The evidence tends to show that Catherine Haverstick was an aged lady who transacted the business in reference to the real estate in controversy through the agency of a son, Harry. In November, 1939, the defendant and the plaintiff's son consulted with the attorney for the plaintiff in reference to the land in question at which time it was agreed that the defendant would pay the sum of $7100 as a flat price without reference to acreage. Plaintiff's counsel thereupon prepared an option in which it was stated that there was 78.46 acres in the tract. On the same day a deed was prepared containing the identical description of the option. Both deed and option contained the statement, after reciting certain exceptions, "leaving in the conveyance to be made herein 78.46 acres of land all of which lies on the north side of the Dayton-Xenia Highway". Upon survey it was found that the large tract "on the north side" of the highway actually contained 73.56 acres and that a small triangular piece on the south side, included within the metes and bounds, contained 4.49 acres.

A plat made by H. H. Warner, a surveyor, discloses how the acreage set up in the deed was arrived at. The description was based upon the original description of a conveyance by Nicholas Coy to Catherine Haverstick dated June 4, 1883 in which that tract is described as containing 95.09 acres more or less. From this original description, the deed in question, excepting a tract of land consisting of 2 13/100 acres conveyed by Catherine Haverstick on September 8, 1927 to Luther Horlacher and further excepting a tract consisting of 14 50/100 acres conveyed by Catherine Haverstick to Charlotte Koogler on June 15, 1939, was drawn. On April 1, 1940, Catherine Haverstick made the conveyance to Beaver in which, after describing the property originally conveyed to

Catherine Haverstick, together with the exceptions, it is stated, "leaving in the conveyance to be made herein **78.46 acres of land all of which lies on the** north side of the Dayton-Xenia Highway".

The plat discloses the fact that the description includes a small tract of 42/100 acre which is designated on the plat as traded to Lucy Snyder, but which, from the testimony, appears to have been sold to other parties.

If the original tract contained 95.09 acres from which there were two exceptions, one of 2 13/100 acres and one of 14 50/100 acres the real remainder would be 78.46 acres as stated in the deed less the 42/100 acre conveyed to Snyder. The deed includes the Snyder tract which had formerly been conveyed leaving the total covered by the deed of 78.04 acres.

The plaintiff claims that there was a mutual mistake in this description by metes and bounds and that the intention of the parties was that the deed should convey only the property located on the north side of the highway. The claim of the defendant is, however, that the deed called for 78.46 acres and that he is entitled to this acreage even though it be necessary in order to make this amount to include the 4.49 acres on the south side of the road.

The deed contained a description of a tract by metes and bounds mentioning certain ascertainable monuments and with the exception of the failure to deduct the 42/100 acre tract accurately stated the number of acres included within the metes and bounds. The deed correctly designated the location of the property in the township and as being part of the Northeast quarter of Section 2 and part of the Southeast quarter of Section 3, Township 2, Range 7.

The plat discloses the fact that the major portion of the original tract is a parallelogram with the greater length north and south, the southern line of which is the dividing line between Section 2 and 3. To this regularly shaped piece was added an irregular tract of 14.40 acres lying entirely south of the section line. Across the southern portion the Dayton-Xenia Pike (Route 35) passes in a northwesterly and southeasterly direction. The survey shows that this pike cuts off to the south thereof a tract of 4.49 acres which is under controversy.

All the metes and bounds and courses are accurately ascertainable by fixed monuments or section lines. The description begins at a stone at the Northeast quarter of Section 2 and the Southeast quarter of Section 3, thence by various courses and distances around the tract to the place of beginning. The only mention made of the highway follows the description from a stone corner to a cemetery lot, "thence north 1¼ degree East 12.80 poles to the center of the Dayton-Xenia Turnpike, thence with the center of said turnpike North 78 degrees West 6.50 poles to a stake in the West line of said quarter section."

Toward the end of the description the line again crosses the pike on a course south 1 degree, 30 minutes west 160 poles, but no mention is made of the crossing of the pike at this point.

The only matter we have before us is to determine the intention of the parties as to their relative rights based on the statement in the deed "all of which lies on the north side of the Dayton-Xenia Highway" which is claimed by the plaintiff to control as against the statement of the deed "leaving in the conveyance to be made herein 78.46 acres of land" upon which the defendant bases his claim to the tract of 4.49 acres which is on the south side of the Dayton-Xenia Pike, but within the description by metes and bounds and necessary to make up the total acreage which he claims to have been conveyed to him.

One of the claims is that the grantor herein intended to convey to her daughter, Charlotte, all of the property south of the road totalling 18.89 acres by the deed made to her on June 15, 1939. It is stated that the acreage conveyed is 14.40 acres. This conveyance so made to her by her mother entirely omits the 4.49 acres now in controversy. There

is evidence to the effect that by this deed the mother intended to convey all the property south of the pike to her daughter. It was made at a comparatively recent date and not long prior to the deed made by the mother to the defendant on the 22nd day of November, 1939. It seems rather strange that if the mother made a conveyance to her daughter and intended to convey all the property on the south side of the highway. that the deed should then have been made omitting from the conveyance the 4.49 acres abutting on the highway. It also seems strange that if this deed from the mother to the daughter was, as a matter of fact, a mistake, that such mistake would not have been discovered and corrected between June 15, 1939 and November 22, 1939.

However. the matter of the reformation of this deed is not before us, the action here being to correct the deed of the mother so as to restore the title to her to 4.49 acres irrespective of her claimed intention to have conveyed it to her daughter on June 15, 1939.

## GENERAL PRINCIPLES

Courts of equity will correct against mistakes by decree ordering the reformation of an instrument into which error has crept. Where, by mistake, an instrument does not fulfill the intention of the parties, but violates it, equity will correct the mistake so as to produce in the instrument a conformity to the true intention of the parties.

When no question of fraud is involved and when the right to reform an instrument is based upon a mistake, it is necessary that such mistake be mutual and that both parties understood the contract as the petition alleges it ought to have been and as, in fact, it was but for the mistake and this is true whether it be a mistake of fact or law.

The plaintiff's witnesses all testify to the effect that it was the purpose of the plaintiff to convey and of the defendant to acquire only that portion of the tract that lies on the north side of the highway, while the defendant insists that the acreage was to control and not the location of the land in reference to the highway.

We will endeavor to ascertain from the defendant's testimony, as disclosed in the record, what he understood to be the intention of the parties. The defendant first testified under cross-examination, pages 4 to 24 of the record and under direct examination, pages 89 to 104. We will not detail defendant's testimony verbatim but shall content ourselves with stating the conclusions that we draw from the testimony.

In the first conversation defendant had with the son and daughter of the grantor, who approached him as to the sale of the land, they told him that their intention was to sell the land on the north side of the road; that Charlotte was to get 14½ acres on the south side. The defendant desired to purchase the tract on the north side and it was agreed that he should pay $7100 for 78.46 acres. The acreage was frequently mentioned. The description of the deed calls for a single tract containing 78.46 acres but both the option and the deed specify that all the land being conveyed lies on the north side of the highway. There was no question but that he was buying all the land of Catherine Haverstick owned by her on the north side. While the portion of the land described on the north side by survey contained 73.56 acres, the defendant states he was buying 78.46 acres. There was no mention of a price per acre, it being a flat figure of $7100 for so many acres of land. Harry Haverstick, the grantor's son, stated to him that there was 78½ acres on the north side of the road upon which he was paying taxes. Before the deed was made, but after the option, the defendant ascertained that the tract on the north side of the road did not contain the full acreage mentioned in the deed. He had been informed that Mrs. Koogler had bought 14½ acres on the south side of the road and the assump-

368

tion was that that was all there was on the south side. He did not know anything about it. He found out that due to a mistake in the description to Mrs. Koogler that the small tract on the south side was not included in her deed from her mother. The defendant made a mortgage to a Mr. Murphy with a somewhat different description than that contained in the deed, but both he and Mr. Murphy understood they were to have 78.46 acres wherever it was as that was what the deal called for. At no time did he have any expectation of getting any land on the south side of the road. There was not 78.46 acres on the north side and defendant assumed that the attorney for the other parties knew what he was doing when he told him he was getting 78.46 acres. Before he received the deed and before he executed the mortgage, he had discovered that the 78.46 acre tract included the small piece on the south side of the road.

The above matter is disclosed by his cross-examination.

His direct examination begins on page 89. He states that he knew, prior to the giving of the deed, that the real estate upon which the option was given was situated partly on the south side of the turnpike, his attention being called to that fact the latter part of February or the first of March. After he had discovered that the deed covered a part of the property on the south side, he sought out Harry Haverstick and proposed a settlement or reimbursement for the land he wasn't supposed to get. He paid $7100 for 78.46 acres. He never platted the land on the south side as he figured the best thing to do would be to wait to know for sure what might be the outcome after his conference with Harry and the other heirs. Had the entire 78 acres been on the north side he would have platted it. When he found that the small tract was on the south side of the road he proposed to deed it back at a price proportionate to what he had paid for the entire tract. He does not deny that both the option and deed stated that all the land was north of

the turnpike. He had not originally intended to get anything on the south side at the time of the giving of the option. After Warner, the surveyor, had made the survey in February, 1940, defendant was informed that there was not 78.46 acres on the north side of the road but only 73 and a fraction. After being informed of the result of the survey, he did not inform Mrs. Koogler because he was carrying out the terms of his contract and it appeared for a little while like somebody was putting something over on him. He did not notify Harry until after the deed was delivered. He did not inform Harry of the error in acreage for the reason that he was supposed to get 78 and a fraction acres by deed and he let it go, that if there was any correction to be made about it later on if they would be reasonable, it would be done and that is what he did.

There are other expressions upon the part of the defendant all clearly tending to point to the fact that at the time he took the option, he understood that all the land lay north of the pike and that was what he was supposed to get. Before the deed was given he had ascertained that there was not the called for amount north of the pike, but he took the position that he would be entitled to get all his option and deed called for, even though it required the conveyance to him of the 4.49 acres south of the pike.

The court below held that the description of the deed did not conform to the intention of the parties and that when the defendant signed the option he thought that all the land he was buying was north of the pike and the grantor thought that all the land she was conveying was north of the pike and it was not the intention of the grantor to sell any of the land south of the pike and not the intention of Beaver to buy any so located; that Beaver had full knowledge that the tract north of the pike did not contain 78.46 acres but only 73.56 acres. This information he had on February 21, 1940, before the deed was delivered.

We are in harmony with this view of the court below. There was a mutual mistake of which Beaver was informed before he consummated the deal. but of which he did not notify the opposite party and having received the deed calling for excessive acreage he then asserted his right to the land south of the pike, in spite of the fact that at the time of the original contract he did not have the intention of purchasing the same. The statement in the deed that the land was all north of the pike has reference to a well known highway, which we may regard as a monument. While this rule may not be applicable to this particular transaction, an order of precedence has been established among different calls for the location of boundaries, and other things being equal, resort is to be had first to natural objects or landmarks, next to artificial monuments, then to adjacent boundaries, then to courses and distances, and **lastly to quantity. 5 O. Jur., p. 741, §38.**

We see no reason why this precedence is not applicable to the present case as between the high- way and the recitation of the number of acres contained in the tract north thereof. The mortgage, however, should cover the entire tract for obvious reasons.

We find no error in the judgment of the court below. The judgment is affirmed. Cause remanded.

BARNES and HORNBECK, JJ., concur.