SANDERS, Appellee,

v.

WEBB et al., Appellants.

[Cite as *Sanders v. Webb* (1993), 85 Ohio App.3d 674.]

Court of Appeals of Ohio,
Pike County.

No. 472.

Decided March 18, 1993.

Mary Bone Kunze, for appellee.

Roger L. Clark and Margaret B. Apel, for appellants.

PETER B. ABELE, Judge.

This is an appeal from a judgment entered by the Pike County Court of Common Pleas quieting title to an 8.81–acre tract of land in favor of Jetty Sanders, plaintiff below and appellant herein. Elmer and Louise Dillow, Gary L. and Joyce H. Swanson, and Allen and Randy Stevens, defendants[1] below and appellants herein, assign the following errors:

First Assignment of Error:

"The trial court committed reversible error in failing to apply the general order of precedence to establish the location of boundaries."

Second Assignment of Error:

---

1. Roxie Lena Webb, the nominal defendant, is no longer a party to this action.

"The trial court committed reversible error in finding by a preponderance of the evidence that Mr. Henry's survey accurately locates the boundary line, inasmuch as said finding is against the manifest weight of the evidence."

The issue in this case involves the location of the section line between Section 16 and Section 21 in Township 5, Range 20, Marion Township, Pike County, Ohio. The parties own adjoining parcels of land. Appellee owns a tract of land in Section 21. Appellants own a tract of land in Section 16, directly to the north of plaintiff's parcel. The ownership of 8.81 acres hinges upon the location of the section line between Section 16 and Section 21.

Ronald P. Henry, a registered professional surveyor, testified for appellee. In 1986, Henry surveyed the property for appellee. Henry stated that the disputed line, the northern boundary line of Section 21 and the southern boundary line of Section 16, follows the centerline of Salem Cave Road. Henry testified the 8.81– acre tract, which lies south of the bend in Salem Cave Road, lies in Section 21.

Henry relied upon an 1839 survey and plat of Section 21 made by the Pike County Surveyor and filed in the Pike County Engineer's Office and the survey and plat of Township 5, Range 20 filed in the State Auditor's Land Office. He based his opinion as to the location of the line on the presence of the road, a very old fence line along the road, and the two documents. Henry testified that the documents indicate the western boundary line of Section 21 is longer than the western boundary line of Section 16 and that the acreage in Section 21 is greater than the acreage in Section 16. Henry used overlays of the old surveys to show how the surveys correspond to the present-day location of Salem Cave Road. Henry noted that a 1927 map contained the earliest reference to Salem Cave Road.

During his direct examination, Henry recited from Clark, Surveying and Boundaries, as follows:

"The original survey must govern if it can be retraced. It must not be disregarded. In making a resurvey, it is a surveyor's duty to relocate the original lines and corners of the place it's actually established and not to run independent new lines even though the original lines were full of errors. We have a simpler version of it in that the following surveyor walks in the steps of the original surveyor."

Dale Exline, a registered professional surveyor, testified for appellants. He stated that the 8.81–acre tract lies within Section 16. Exline testified that the line between Section 21 and Section 16 is a straight line which deviates from Salem Cave Road as the road angles north. Exline based his opinion on his review of county road maps, USGS topographical maps, a field survey he

conducted, the iron pin sets he found in the ground on that line, and his observation that section lines are usually straight lines.

On May 20, 1991, the court conducted a bench trial. The court's July 23, 1991 judgment entry provides as follows:

"1. Count Two of plaintiff's complaint essentially demands quiet title to and seeks recovery of the real estate described as *part* of Exhibit 'A'; ie 8.81 acres. See Pl.Ex. 1.

"2. The parties agree that a primary issue of fact is the location of the section line in the disputed area, between Sections 21 and 16 of Township 5, Range 21, Marion Township, Pike County. Plaintiff also claims the disputed area by adverse possession.

"3. The two surveyors, Henry and Exline, disagree upon the location of the Section line.

"Henry, relying upon old plats and surveys, states that the Section line actually changes direction, falling along Salem Cave Road in the disputed area. See Pl.Ex. 4, County Engineer's Plat Records. He also points out that State Land Office records show Section 21 containing more acreage (652 + acres), Section 16 (588 + acres), thus reinforcing his opinion. See Pl.Ex. 3. The overlays of Pl.Ex. 5 (aerial photo) and 5A (geological survey map) illustrate his opinion.

"Exline states that the easterly projection of the section line between adjoining Sections 17 and 20 provides the location for the Section line in the disputed area. See Def.Ex. 1 and 2., and Pl.Ex. 5A. He points out that his line is straight and extends thru two iron pins he found in a fence line. Exline states that the Congress Lands were surveyed in uniform Sections whose boundaries were straight lines and that did not change direction.

"\* \* \* \*

"The Court is persuaded by a preponderance of the evidence, that the Henry Survey (Pl.Ex. 1) accurately locates the boundary line as lying along the centerline of Salem Cave Road in the disputed area. The Court is not persuaded by a preponderance of the evidence that plaintiff has established her claim of adverse possession of the disputed area.

"Therefore, it is the order of the Court that title to the disputed area shown as 8.1 acres on Pl.Ex. 1 (see attached) be quieted in plaintiff; and plaintiff is hereby awarded the right to peaceful possession, use and enjoyment of said property to the exclusion of the above named defendants. Upon request of plaintiff, the Clerk shall cause a writ of possession to issue to the Sheriff of Pike County, Ohio, to remove defendants and place plaintiff in possession of the described property.

"Upon motion of defendants made at the close of plaintiff's case-in-chief, the Court dismissed plaintiff's claim for damages."

Appellant filed a timely notice of appeal.

We note that on April 17, 1992, appellants Elmer Dillow, Louise Dillow, Gary Swanson, and Joyce Swanson filed a document captioned "exhibit." The "exhibit" states as follows:

"The Defendants feel their Surveyor, Dale A. Exline, has made the correct survey and plat of Section 16 and 21 in the disputed area.

"However, if the Appeal Court feel they don't have enough information to over-rule the Judgment in this case, they feel the case should be sent back to the Court of Common Pleas, Pike County, Ohio, to the Judge in said case. If not, they feel it should be sent to the County Commissioners to have them direct the County Engineer to locate the section lines as prescribed under O.R.C. 315.28–5553.06.

"The Defendants feel that if this is accomplished, the problems that they are experiencing will then be rectified."

Attached to the "exhibit" is a June 24, 1991 letter addressed to Elmer Dillow from Charles J. Neff, P.E., P.S., Chairman of the Ohio State Board of Registration for Professional Engineers and Surveyors. The letter states:

"At the June 13, 1991 Board meeting, the Board determined that with the information available to them at this time they could not determine if either surveyor had made a mistake.

"The Board recommends that you contact the Judge on this case or the County Commissioners and have them direct that the County Engineer locate the section lines as prescribed under the O.R.C. Section numbers 315.28, 5553.06. The Board feels that if this is accomplished, the problems that you are experiencing could then be rectified."

App.R. 9(A) and 12(A)(1)(b) limit a reviewing court's consideration to "original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court * * *." App.R. 9(A). App.R. 12 provides in pertinent part:

"(1) On an undismissed appeal from a trial court, a court of appeals shall do all of the following:

"(a) Review and affirm, modify, or reverse the judgment or final order appealed;

"(b) Determine the appeal on its merits on the assignments of error set forth in the briefs under App.R. 16, *the record on Appeal under App.R. 9* and, unless waived, the oral argument under App.R. 21."

In *State v. Johnston* (1990), 64 Ohio App.3d 238, 246, 580 N.E.2d 1162, 1168, quoting *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, the court wrote:

"It is well established that '[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.'" See, also, *State v. Callihan* (1992), 80 Ohio App.3d 184, 608 N.E.2d 1136.

We again note appellants filed this material on April 17, 1992. Obviously, the trial court did not consider this information prior to issuing its July 23, 1991 judgment entry. Therefore, because an appellate court cannot consider material which was not part of the trial court's proceeding, we may not consider this material as it is outside the record.

Because appellant's first and second assignments of error raise related issues, we will consider them jointly. In their first assignment of error, appellants assert the iron pin sets found by Exline constitute monuments and, therefore, should prevail as a boundary marker over Salem Cave Road. Appellee argues that Salem Cave Road, which was relied upon by appellee's surveyor, is also a monument. Appellee maintains that when determining the section line, the road and the iron pin sets are equal in significance. In their second assignment of error, appellants assert the trial court's finding is against the manifest weight of the evidence.

The Ohio Supreme Court has stated that when determining boundary disputes:

"It is well settled that monuments are of prime importance in settling boundary disputes. The general rule is well stated in 6 Thompson on Real Property (Perm.Ed.), 519 Section 3327, as follows:

"'A "monument" is a tangible landmark, and monuments, as a general rule, prevail over courses and distances for the purpose of determining the location of a boundary, even though this means either the shortening or lengthening of distance * * *. Generally, in determining boundaries, natural and permanent monuments are the most satisfactory evidence and control all other means of description, in the absence of which the following calls are resorted to, and generally in the order stated: First, natural boundaries; second, artificial marks; third, adjacent boundaries; fourth, course and distance, course controlling distance, or distance course, according to circumstances. Area is the weakest of all means of description. The ground of the rule is that mistakes are deemed more likely to occur with regard to courses and distances than in regard to objects

which are visible and permanent. The reason assigned for this rule is that monuments are considered more reliable evidence than courses and distances.'

" * * *

"It is also settled that a public street or road or the boundary line of other property may be used as a monument." *Broadsword v. Kauer* (1954), 161 Ohio St. 524, 534–535, 53 O.O. 395, 399–400, 120 N.E.2d 111, 116. See, also, *Haverstick v. Beaver* (App.1941), 34 Ohio Law Abs. 363, 37 N.E.2d 650; *Kramp v. Toledo Edison Co.* (1961), 114 Ohio App. 9, 18–19, 18 O.O.2d 298, 303–304, 180 N.E.2d 172, 178; *Cardosi v. Wise* (1933), 44 Ohio App. 205, 209, 14 Ohio Law Abs. 698, 700, 184 N.E. 863, 864; *Briggs v. Jeffers* (1965), 7 Ohio Misc. 44, 46–47, 36 O.O.2d 36, 38, 215 N.E.2d 622, 624–625; and 2 McDermott, Ohio Real Property Law and Practice (3 Ed.1966) 126, Section 3–21G.

In *Sellman v. Schaaf* (1971), 26 Ohio App.2d 35, 39, 55 O.O.2d 69, 72, 269 N.E.2d 60, 65, the court discussed resurveys and the function of the second surveyor:

" * * * When an original survey has been made, it is not the plat or the metes and bounds description that is primary. The primary function of the second surveyor is to find first where the boundaries were established by the first surveyor. Only where this becomes impossible of accomplishment does the second survey turn to the courses, distances, and still-existent monuments to determine the boundaries. The essential rule governing the resurvey is to follow the steps of the first surveyor.

"McDermott, *supra*, at 139, paragraph 3–26A states:

" 'Conveyances are presumed to be made according to a prior actual survey. It is said that the primary purpose of construction is to follow the footsteps of the surveyor on the ground.'

" * * *

"In Clark, Surveying and Boundaries (2d Ed.1939), it is said at page 727, Section 665:

" 'The original survey must govern if it can be retraced. It must not be disregarded. So, too, the places where the corners were located, right or wrong, govern, if they can be found. * * * In making a resurvey it is the surveyor's duty to relocate the original lines and corners at the places actually established and not to run independent new lines, even though the original lines were full of errors.' "

In Moffitt & Bouchard, Surveying (8 Ed.1987), Sections 18–16, 18–19, and 18–24, the authors discussed the methods used in the early surveys:

"The marking of the survey lines on the ground was supposed to be done in such a manner as to perpetuate the lines. This was done by monumenting the regular corners, by recording in the field notes all natural topographic features, and, whenever living timber was encountered, by means of blazing and hack marks on the trees.

" * * *

"Unfortunately for the present-day surveyor, the monuments used on the early surveys were not permanent in character and forest fires and settlers have destroyed most of the timber, so that the retracing of the old lines is often difficult and in many instances impossible.

" * * *

"The law provides that the original corners established during the progress of the survey shall forever remain fixed in position, and that even evident errors in the execution of the survey must be disregarded where these errors were undetected prior to the sale of the lands. The original monuments thus assume extreme importance in the location of land boundaries. Unfortunately, most of the public lands were surveyed before the present day regulations relative to the character of monuments went into effect, and as a consequence most of the monuments used were of a very perishable nature. Their disappearance or destruction has rendered the relocation of old lines a very difficult task.

" * * *

"In the original survey it was presumed that permanent monuments were being carefully established and witnessed, so that long lines of monuments would be perfect guides to the place of any one that chanced to be missing. Unfortunately, the "monuments" were often nothing but green sticks driven into the ground, lines were carelessly run, monuments were inaccurately placed, witnesses were wanting in permanence, and recorded courses and lengths were incorrect. As the early settlers made little effort to perpetuate either the corner monuments or the witnesses, the task of the present-day surveyor in reconciling much conflicting evidence (or in even finding any kind of evidence) is often an extremely difficult task. * * * It must be remembered that no matter how erroneously the original work is done, lines and monuments that can be identified still govern the land boundaries."

We note that in 2 History of the State of Ohio (1942) 136, the author discussed the difficulties relating to inaccurate land descriptions:

"The principal reason for disputes over land titles was the inaccurate measurement or description of land on the part of the early surveyors. No state displays a greater variety of surveying methods than does Ohio; it was the proving ground for the varied modifications of the rectangular system, and within the

Virginia Military District the so-called 'indiscriminate survey' reached its ultimate absurdity, although Kentucky might lodge a counter-claim for this doubtful distinction."

When reviewing evidence presented at trial, an appellate court must not reweigh the evidence. In *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus, the Ohio Supreme Court held:

"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." See, also, *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 566 N.E.2d 154; *Ross v. Ross* (1980), 64 Ohio St.2d 203, 18 O.O.3d 414, 414 N.E.2d 426.

An appellate court should not substitute its judgment for that of the trial court when there exists competent, credible evidence going to all the essential elements of the case. In *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410, 461 N.E.2d 1273, 1276, the court wrote:

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."

In the instant case, after hearing both expert witnesses testify and after reviewing the exhibits, the trial court determined that Henry's survey accurately depicts the location of the section line between Section 21 and Section 16 as it appears in the original survey. In its decision, the trial court emphasized that Henry's use of the old plats, surveys, and the State Land Office Records were persuasive.

After a review of the evidence presented below, we find sufficient competent, credible evidence to support the trial court's judgment. The primary function of the second surveyor is to find the boundaries established by the first surveyor. The trial court found, by a preponderance of the evidence, that appellee's surveyor located the original section line. We will not substitute our judgment for that of the trial court.

Appellants assert the iron pins relied upon by Exline constitute artificial monuments and require the conclusion that Exline's survey accurately depicts the location of the section line. We disagree. Although we agree with appellants' proposition of law regarding the general rule that monuments are of prime importance in settling boundary disputes, we find no link established between the iron pins found by Exline and the original survey. Exline testified that section lines are usually straight lines and that, in his opinion, the location of the disputed

section line coincides with the projection of the section line of adjoining sections. Again, we find no evidence the iron pins were used in the original survey.

We also note that appellee contends Salem Cave Road constitutes an artificial monument. We disagree with appellee. The evidence reveals that Salem Cave Road did not exist at the time of the original survey. Henry testified the earliest reference to the road is contained in a 1927 map. Thus, if the road did not exist at the time of the original survey, we question whether the road can be deemed to be a monument for purposes of the original survey. Henry's testimony did establish, however, that the disputed section line is located at the *present location* of Salem Cave Road.

Accordingly, based upon the foregoing reasons, we overrule appellants' assignments of error.

*Judgment affirmed.*

HARSHA, P.J., and GREY, J., concur.