OWENS et al., Appellees,

v.

HAUNERT et al., Appellants.

[Cite as *Owens v. Haunert* (2000), 137 Ohio App.3d 507.]

Court of Appeals of Ohio,
Twelfth District, Clermont County.

No. CA99–07–065.

Decided April 17, 2000.

508

David S. Mann, for appellees.

Burreson, Bradford & Hill and John C. Korfhagen, for appellants.

WILLIAM W. YOUNG, Judge.

Defendants-appellants, Steve and Tina Haunert and Alan and Diana Eberhart,[1] appeal the decision of the Clermont County Court of Common Pleas quieting title to property on behalf of plaintiffs-appellees, Odell and Helen Ruth Owens.

The parties are adjoining landowners along Branch Hill–Miamiville Road in Clermont County, Ohio. The properties at issue were originally part of Steele Subdivision, which was created by a recorded plat in 1888. Steele Subdivision is bounded on the east by the right-of-way of Branch Hill–Miamiville Road, on the south by the right-of-way of Old Branch Hill–Miamiville Road, and on the north by Tarkington Subdivision. The southeast corner of Tarkington Subdivision is at the same point as the northeast corner of Steele Subdivision.

The recorded plat included lot measurements, bordering roads, and "paper," or undeveloped, roads within the subdivision, but no designated monuments by which to locate positions. The length and width of each lot and paper road are clearly marked on the plat. Since the time that the subdivision was recorded, the properties have been conveyed by lot numbers in accordance with the recorded plat. The present dispute arises out of numerous surveys undertaken to assign positions by which the recorded distances are to be measured.

The Owenses claim title through a series of grants of specific lots within Steele Subdivision. Helen Owens acquired properties by deed in 1959. In 1963, she quieted title to Lots 1–19, 21–24, 26–33, 36–39, and 93–110. Lot 1 is in the northeast corner of the subdivision. Lots 1–17 are the Owenses' lots fronting Branch Hill–Miamiville Road. According to the plat, these lots have a total frontage distance of five hundred three feet. It is this distance which is in dispute. In 1963, the Owenses were conveyed Lots 111–122 and part of Lots 123–127 by deed.

Various "paper streets" in Steele Subdivision have been vacated by the Clermont County Commissioners over the years, and the Owenses have received title to additional property as a result of these road vacations. The most recent vacation, in 1992, concerned Wiltsee Avenue, which was designated to be fifty feet wide. The Owens were entitled to twenty-five feet of the former paper roadway, adding land to Lots 17–24 and 107–114, which are located on the north side of Wiltsee Avenue.

Appellants also received title through a chain of conveyances based upon lot numbers. In 1984, Sylvia Johnson received title to Lots 40–61, 129–150, and 219–240. Lots 47–54 front Branch–Hill Miamiville Road next to the Owenses' lots.

---

1. When referred to collectively, the Eberhardts and Haunerts will be referred to as "appellants."

According to the recorded plat, these lots have a total frontage of two hundred seventy-five feet. Lots 40–47 and 129–136 abut the southern side of Wiltsee Avenue, across from the Owenses' lots. When Wiltsee Avenue was vacated, the southern twenty-five feet of the roadway was added to these lots. In 1992, Johnson conveyed some, but not all, of Lots 40–61 and 129–150 to "Montag," who later conveyed the lots to the Eberhardts and the Haunerts.

The deed conveying the property from Johnson to Montag departs from the use of lot numbers, and uses a legal description of the property as set out in a 1992 survey by Jay Olberding. The deeds conveying the properties from Montag to the Eberhardts and Haunerts also use a legal description. These conveyances all occurred after the vacation of Wiltsee Avenue, and they presumably include the added property.

In 1994, the Owenses commissioned Richard Brausch to survey their property and Steele Subdivision to determine the proper property boundaries. The reason for this survey was that the Owenses were disappointed with an earlier survey that showed them owning less Branch Hill–Miamiville Road frontage than they believed they possessed. Additionally, they were concerned that the deeds conveying land to Montag, and later the Eberhardts and Haunerts, included lands that the Owenses believed they possessed. Unlike the earlier survey, which concluded that the Owenses held title to approximately four hundred seventy-nine feet of frontage and an additional twenty-five feet from the Wiltsee vacation, the Brausch survey concluded that they owned five hundred three feet of frontage, plus the additional twenty-five feet from the vacation.

On May 16, 1997, the Owenses filed a complaint seeking to quiet title to the contested property. The Eberhardts and Haunerts were named as defendants, as well as Donald, Terri, and Steve Hatton and Carroll Hall, all of whom were also adjoining landowners. Because Hall's and the Hattons' lands did not adjoin the contested boundary, they were subsequently dismissed from the suit. Appellants timely filed an answer and counterclaims seeking a declaratory judgment and damages for defamation of title. Most of the counterclaims were subsequently dismissed, and the case proceeded on only the quiet title and declaratory judgment actions.

Trial was held on September 3, 1998. The Owenses presented Brausch and Charles Goldick, who acted as a field crew chief in the Brausch survey, as witnesses. The Eberhardts and Haunerts presented Olberding and Gerard Berding, who had performed an earlier survey within Steele Subdivision, as witnesses. Both parties introduced exhibits concerning the deeds conveying lands and the numerous surveys performed in Steele Subdivision over the years. The parties submitted written closing arguments after the trial.

On May 13, 1999, the trial court filed a decision and judgment entry that quieted title for the Owenses in accord with the Brausch survey. The trial court extensively reviewed the evidence presented concerning the numerous surveys, finding that although the Brausch survey differed from the other surveys, the other surveys suffered from substantial flaws that rendered them unreliable. The Eberhardts and Haunerts appeal, raising five assignments of error:

Assignment of Error No. 1:

"The trial court erred in granting more land to the appellees than they were deeded."

Assignment of Error No. 2:

"The trial court erred in establishing Wiltsee Avenue at a location which differs from that established by the board of county commissioners."

Assignment of Error No. 3:

"The trial court erred in entering judgment for appellees based on the survey performed by Richard Brausch."

Assignment of Error No. 4:

"The trial court erred in relying on the plat of Steele Subdivision to the exclusion of all surveys and field monumentation."

Assignment of Error No. 5:

"The trial court erred in rejecting the surveys of Mr. Berding and Mr. Olberding."

In the first, third, fourth, and fifth assignments of error, appellants contend that the trial court erred by quieting title on behalf of the Owenses. Appellants argue that the trial court incorrectly found the Brausch survey more reliable and credible than the Berding and Olberding surveys.

Appellants spend a considerable portion of their brief rearguing the credibility of the evidence concerning the surveys presented to the trial court. Appellants are asking this court to reevaluate the evidence and determine that the Berding and Olberding surveys are more reliable and credible than the Brausch survey. In essence, appellants are requesting that this court determine that the trial court incorrectly resolved evidentiary disputes.

Evaluating evidence and assessing the credibility of that evidence are the primary functions of the trier of fact, in this case the trial court, and not an appellate court. *Yuhasz v. Mrdenovich* (1992), 82 Ohio App.3d 490, 492, 612 N.E.2d 763, 764. In judging the evidence in support of a trial court's judgment in a civil case, " '[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court

as being against the manifest weight of the evidence.'" *Id.,* quoting *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

■ "'The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial court judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Sanders v. Webb* (1993), 85 Ohio App.3d 674, 682, 621 N.E.2d 420, 425, jurisdictional motion overruled, 67 Ohio St.3d 1455, 619 N.E.2d 423, quoting *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276.

■ Therefore, if there is competent, credible evidence to support the factual findings of the trial court, we review only whether, after weighing the evidence and resolving evidentiary conflicts and issues of credibility, the trial court properly applied the governing law to those factual findings.

The law concerning the establishment of property boundaries, the propriety of a conducted survey, and what priority that survey must be given in relation to prior and subsequent surveys has been extensively discussed in *Broadsword v. Kauer* (1954), 161 Ohio St. 524, 53 O.O. 395, 120 N.E.2d 111; *Sellman v. Schaaf* (1971), 26 Ohio App.2d 35, 55 O.O.2d 69, 269 N.E.2d 60; and *Sanders,* 85 Ohio App.3d 674, 621 N.E.2d 420. Rather than providing an exhaustive discussion of the law concerning these topics, we incorporate the in-depth analysis provided in these cases, quoting only necessary passages.

As noted by the court in *Sellman:*

"[T]he subdivision is first done by the survey of the premises, establishing monuments, corner posts, etc., so that a physical or semi-physical dividing of the land with the attendant markings takes place. Then a 'plat is made.' The symbolic representation of what was done on the premises becomes the recorded documentation of the action taken and provision is made for the dedication and acceptance of public streets and ways." 26 Ohio App.2d at 40, 55 O.O.2d at 73, 269 N.E.2d at 65.

■ Once a plat is made and recorded, "'reference in a deed to a plat incorporates the plat and constitutes an adoption of the survey as a part of the description. A conveyance by lot number assigned by a plat incorporates the plat as part of the description. The survey as actually made controls the representation of it on the plat.'" *Id.* at 41, 55 O.O.2d at 73, 269 N.E.2d at 65.

■ When making a survey, whether for purposes of establishing a plat or to resurvey a plat already established, monuments are of primary importance:

" 'A "monument" is a tangible landmark, and monuments, as a general rule, prevail over courses and distances for the purpose of determining the location of a boundary, even though this means either the shortening or lengthening of distance * * *. Generally, in determining boundaries, natural and permanent monuments are the most satisfactory evidence and control over all other means of description, in the absence of which the following calls are resorted to, and generally in the order stated: First, natural boundaries; second, artificial marks; third, adjacent boundaries; fourth, course and distance, course controlling distance, or distance course, according to circumstances. Area is the weakest of all means of description.' " *Broadsword,* 161 Ohio St. at 533–534, 53 O.O. at 399, 120 N.E.2d at 116; *Sanders,* 85 Ohio App.3d at 679, 621 N.E.2d at 423, quoting 6 Thompson on Real Property (Perm.Ed.) 519, Section 3327.

■ A public street or road or the boundary line of another property may be used as a monument. *Broadsword,* 161 Ohio St. at 534–535, 53 O.O. at 399–400, 120 N.E.2d at 116–117.

■ Once a prior, reliable survey has been performed, "[t]he primary function of the second surveyor is to find first where the boundaries were established by the first surveyor. Only where this becomes impossible of accomplishment does the second survey turn to the courses, distances, and still-existent monuments to determine the boundaries. The essential rule governing the resurvey is to follow the steps of the first surveyor." *Sellman,* 26 Ohio App.2d at 41–42, 55 O.O.2d at 73, 269 N.E.2d at 65.

■ It is the duty of the second surveyor to find where corners were placed, right or wrong, where they can be found, and then to relocate the original lines and corners at the places established. The resurveyor should not run new lines, even where the first are full of errors. *Sanders,* 85 Ohio App.3d at 680, 621 N.E.2d at 424, quoting Clark, Surveying and Boundaries (2 Ed.1939) 727, Section 665. The original monuments set or established at the time that the plat was made in the original survey are of primary importance in locating boundaries. *Sanders,* 85 Ohio App.3d at 681, 621 N.E.2d at 424, quoting Moffit & Bouchard, Surveying (8 Ed.1987), Sections 18–16, 18–19, and 18–20. As noted in *Sellman,* stakes or other artificial monuments control over lesser calls, " 'so long as it is certain that they mark the corners of the original survey.' " 26 Ohio App.2d at 43, 55 O.O.2d at 74, 269 N.E.2d at 66, quoting 6 Thompson, Real Property (1962 Replacement), Description and Boundaries, 594, Section 3047. The identity and validity of a given monument, where in question, must be established by a preponderance of the evidence. *Sellman,* 26 Ohio App.2d at 46, 55 O.O.2d at 76, 269 N.E.2d at 68.

In the instant case, the parties presented conflicting testimony concerning the reliability of the many surveys performed in and around Steele Subdivision. The original surveys, including those by Berding and Olberding, were performed according to specific monuments, natural and artificial, found throughout the subdivision. On the other hand, Brausch conducted his survey with reference to the recorded plat and beginning with the corner of the county roads marked on the plat. These roads are now Branch Hill–Miamiville Road and Old Branch Hill–Miamiville Road. Appellants contend that the original surveys must govern because they were done according to established monuments.

The trial court found otherwise. Because appellants were offering the original surveys as proof of the boundaries of their properties, it was incumbent upon them to offer proof, by a preponderance of the evidence, that the monuments relied upon were placed for purposes of the original plat. It is conceded that the monuments were placed after the plat was established. Additionally, appellants were unable to state who placed the monuments and for what purpose. The trial court found that these discrepancies made these surveys less reliable because the monuments upon which the surveys were based were not certain in that it could not be shown they were placed for survey purposes.

On the other hand, the Brausch survey took into account the recorded plat and the lot sizes listed on the plat. Rather than beginning with the contested surveys, Brausch began with the known corner of the Branch Hill roads and the results of a survey which preceded the founding of Steele Subdivision. Because Brausch did not follow the methods of the earlier surveys, it was found that his survey did not suffer from the unreliability of the earlier surveys. Additionally, the Brausch survey accounted for the lots and lot sizes of the recorded plat. The earlier surveys seemed to disregard the recorded plat completely even though it was the only expression of the original grantor's intentions.

In light of this conflict in the evidence presented, we cannot say that the trial court lost its way in finding the Brausch survey more reliable. Although a survey should generally retrace the results of earlier surveys, such need not be the case where the earlier surveys are not proven reliable. The trial court correctly acted upon the results of the Brausch survey and appropriately quieted title in the Owenses' favor. The first, third, fourth, and fifth assignments of error are overruled.

In their second assignment of error, appellants contend that the trial court was precluded from finding that Wiltsee Avenue was located in a place different from the legal description in the county commission resolution vacating the paper road. They further argue that the trial court exceeded its powers when it ordered the

commissioners to amend the resolution because the commissioners were not a party to the suit.

██ The trial court did not err in finding that Wiltsee Avenue was located differently than as included in the legal description located in the resolution. That legal description was based upon the Berding survey, which was discredited by the trial court. Thus, the trial court was not bound to follow that unreliable survey or the legal description based upon the survey.

██ However, the trial court was precluded from ordering the commissioners to amend a seven-year-old resolution because the commissioners were not party to the suit. Until the commissioners are party to the action, the trial court holds no jurisdiction over them.

Civ.R. 19(A) provides, in part:

"A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject to the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7). If the defense is not timely asserted, waiver is applicable as provided in Rule 12(G) and (H)."

At the time that the instant action was filed, there was no indication that the resolution vacating Wiltsee Avenue would be affected, which became clear only in light of the trial court's decision. The legal description in the resolution places the paper road in a location different from that of the Brausch survey.

After the trial court's decision, there now is a question as to whether the commissioners have effectively vacated the proper location for Wiltsee Avenue. There may now be questions concerning whether this discrepancy affects the titles to the parties' properties, because the county may still hold an interest in the land at issue. We must therefore vacate that part of the trial court's judgment concerning the resolution and remand the cause for the trial court to consider whether the commissioners must be joined as an indispensable party. Civ.R. 19(B).[2]

---

2. Civ.R. 19(B) states:

Upon remand, there should be opportunity for the parties either to join the commissioners as a party to the action or to request that the commissioners voluntarily amend the resolution to conform to the trial court's decision. If the commissioners must be joined as a party and the parties fail so to join them, the trial court must then consider whether the court must order the commissioners to be joined or whether the cause must be dismissed. Civ.R. 19(A) and (B). The trial court may order the commissioners to take specific actions only if the commissioners are made party to the action. The second assignment of error is sustained.

Judgment affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion.

*Judgment accordingly.*

POWELL, P.J., and VALEN, J., concur.

"If a person as described in subdivision (A)(1), (2), or (3) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him to those already parties; * * * third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joiner."