JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3(A).
In August 1999, defendants-appellants Robert and Teresa Luchsinger hired plaintiff-appellant Robert Lengerich, dba Lengerich Homes, to build a single-family home on their property in Cincinnati, Ohio. A contract was signed indicating that the Luchsingers had paid a $20,000 deposit for the construction of the home. The contract also estimated that the construction would be completed by mid-February 2000. During the construction process, the Luchsingers made three more payments toward the contract price for a total of $203,284.86 (including the original $20,000 deposit). The house was completed in May of 2000, with the exception of punch-list items that were to be repaired within 30 days after closing. But a closing never occurred. Although Lengerich submitted a final payment request to the Luchsingers, they did not pay. The Luchsingers claimed that they did not close on the house because a final walk-through was not going to be conducted prior to closing, there was not a breakdown of costs in constructing the house, and there was a leak in the basement.
Because the Luchsingers refused to close on the house, Lengerich sued, alleging breach of contract and requesting damages in the amount of $56,379.85, the amount remaining on the contract price. The Luchsingers counterclaimed, asserting, inter alia, that Lengerich had violated the Ohio Consumer Sales Practices Act, R.C. Chapter 1345, breached the contract by failing to fully perform his duties as a general contractor, and constructed the house negligently.
Following a jury trial, the trial court entered judgment in favor of Lengerich on his breach-of-contract claim in the amount of $56,380 and entered judgment in favor of the Luchsingers on their breach-of-contract claim in the amount of $4,470. The Luchsingers have timely appealed this judgment, bringing forth three assignments of error.
In their first assignment of error, the Luchsingers assert that the trial court erred in entering judgment on the jury's verdict finding that Lengerich had not violated the Ohio Consumer Sales Practices Act ("OCSPA"). The Luchsingers argue that the jury's finding was against the manifest weight of the evidence.
A civil judgment will not be reversed on the manifest weight of the evidence when it is supported by some competent, credible evidence going to all essential elements of the case.[1] In reviewing the following arguments, we are mindful that the trier of fact is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.[2]
The Luchsingers argue that Lengerich violated the OCSPA (1) by evading his legal obligations and maintaining a pattern of inefficiency and incompetence as a general contractor; (2) by failing to take reasonable steps to ensure the delivery of the goods and services he had promised; (3) by not performing in a "workmanlike" manner; and (4) by failing to complete the construction of the house in a reasonable time. At the heart of the Luchsingers' complaints is the allegation that Lengerich failed to deliver services as a general contractor by failing to timely order materials needed for the construction of the home, by not coordinating the work schedule of the subcontractors, and by not timely returning the Luchsingers' phone calls. The Luchsingers maintain that Lengerich's failures resulted in Mr. Luchsinger having to assume the responsibility of a "general contractor."
Upon a careful review of the record, we believe that the jury considered the somewhat unusual circumstances surrounding the construction of the home and properly determined that Lengerich did not violate the OCSPA in the manner that the Luchsingers have claimed.
Here, the Luchsingers were anxious to have their house built because they were trying to return some normalcy to their lives. Their previous home had burned in a fire, and they had lost a daughter in that fire. While the new house was being constructed, they and their children were living with Mrs. Luchsinger's parents. Thus, often when there were delays in ordering materials or receiving bids from subcontractors, the Luchsingers would take it upon themselves to locate and order the materials or contact a subcontractor and schedule work. For example, Lengerich did delay in ordering bricks for the house, and this mistake was compounded by a brick shortage in Cincinnati. Although Lengerich did find another brick supplier, albeit far from Cincinnati, Mr. Luchsinger took it upon himself to locate another brick supplier closer to Cincinnati. Also, when Lengerich did not give the Luchsingers the flooring subcontractor's bid right away, they contacted another flooring company to do the work.
The Luchsingers claim that Lengerich failed to schedule subcontractors. But it appears from the record that most of the failures to schedule a subcontractor were based on the circumstances of the construction project. Because the Luchsingers had lost their home in a tragic fire, many people in their community donated building materials or their labor or both. Thus, the Luchsingers had requested that Lengerich use these subcontractors in building the home. The record demonstrates that these subcontractors were reporting to Mr. Luchsinger directly and that they did not have much, if any, contact with Lengerich. Mr. Luchsinger testified that subcontractors who volunteered labor or materials reported to him, and that he had paid directly the subcontractors that he had specifically hired.
Finally, while the completion of the home was delayed by three months, this was not an unreasonable delay given that the Luchsingers decided, during construction, to have the basement finished and to make other additions or changes to the home. Additionally, some evidence presented at trial demonstrated that some slight delays could be attributed to the subcontractors who were volunteering their time, because they would choose to give priority to other paid jobs before performing work on the Luchsingers' home.
With respect to the work being performed in a workmanlike manner, we note that Mr. Luchsinger testified that he was happy with the quality of the construction of the home except for the water leak in the basement.
Next, the Luchsingers argue that Lengerich violated the OCSPA by failing to issue a receipt that explained his refund policy for the $20,000 deposit. While this may technically be a violation of the OCSPA in some instances, it was not applicable here where Mr. Luchsinger testified that he had never asked for or desired a refund of the deposit, and where the Luchsingers received a copy of the contract indicating that they had made a $20,000 down payment. Additionally, the fact that Lengerich operated under a trade name not registered with the Ohio Secretary of State until after he had entered into a contract with the Luchsingers was not a violation of the OCSPA.[3]
Finally, the Luchsingers argue that Lengerich violated the OCSPA by unilaterally falsifying documents. We disagree. Lengerich testified that he completed over 20 change orders to document changes that were either requested or approved by the Luchsingers during the framing walkthrough. He further testified that he sent these change orders to the Luchsingers for their signature and that they were not returned. Because there was competent, credible evidence to indicate that Lengerich did not unilaterally backdate any documents, we will not overturn the jury's verdict finding that Lengerich did not violate the OCSPA. Accordingly, the first assignment of error is overruled.
In their second assignment of error, the Luchsingers maintain that the trial court erred in entering judgment in favor of Lengerich on his breach-of-contract claim because Lengerich did not substantially perform his obligations. We disagree. The record supports the jury's finding that Lengerich substantially completed the construction of the home prior to closing. There was a "punch list" of items that needed to be fixed, including a leak in the basement, but those were all to be fixed within a month of closing. And simply because there is a "punch list" of items remaining to be addressed does not mean the builder has not substantially performed the construction of a new home.[4]
The Luchsingers also mention that they did not want to close without an itemized list of the costs to build the house. But there is nothing in the record to indicate that they had requested that information from Lengerich prior to the closing. The Luchsingers also wanted a final walkthrough, but Denney Lengerich, Robert Lengerich's brother and a carpenter on the Luchsingers' home, testified that there was a final walkthrough between the first and second scheduled closings. Accordingly, as there was competent, credible evidence to support the jury's verdict, we overrule the second assignment of error.
In their third assignment of error, the Luchsingers assert that the trial court erred in entering judgment upon the jury's verdict denying their negligence claim. The Luchsingers argue that Lengerich did not use ordinary care, as established by the community standard among contractors, in building their home. At trial, the Luchsingers offered the testimony of Robert Beck, a civil engineer who had examined the house for structural deficiencies. He did find items that he said were flawed, but admitted that most of the items were punch-list items that Lengerich would have been required to fix if there had been a closing. Lengerich testified that he would have fixed those items if there had been a closing and he had been paid.
The Luchsingers also presented the testimony of Dan Reupert, an expert witness on heating and cooling systems who said that the furnace installed by Lengerich was too big for the home and, thus, caused frequent shutdowns. While this may have been the case, Lengerich was trying to fix this problem prior to the last closing date. Based upon the evidence presented at trial, we cannot say that the jury's verdict on the Luchsingers' negligence claim was against the manifest weight of the evidence. The jury was free to believe all, some, or none of the evidence presented by the Luchsingers. Accordingly, the third assignment of error is overruled and the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Hildebrandt, P.J., Gorman and Painter, JJ.
[1] See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,280, 376 N.E2d 578.
[2] See Sanders v. Webb (1993), 85 Ohio App.3d 674, 682,621 N.E.2d 420, citing Seasons Coal Co. v. Cleveland, 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
[3] See Ganson v. Vaughn (1999), 135 Ohio App.3d 689, 694,735 N.E.2d 843.
[4] See Marinich v. Bush (Dec. 30, 1999), 12th Dist. Nos. CA99-01-011 and CA99-01-018.