OPINION *Page 2 
{¶ 1} Appellants, Floyd and Janet Kennedy, appeal from a judgment of the Perry County Court of Common Pleas in favor of appellee, Barbara Hill, in a property line dispute.
 STATEMENT OF FACTS AND CASE {¶ 2} In this case, adjacent property owners, appellants Floyd and Janet Kennedy and appellee Barbara Hill, disputed the ownership of .30 acres of property. The facts and history of the case are as follows:
 {¶ 3} The parcel of property in dispute was subdivided from a parent parcel purchased by Arthur and Armel Rose in 1946. The property was not surveyed prior to the conveyance to the Roses. Furthermore, the deed description for the 1946 conveyance utilized, in part, monuments to denote property boundary lines.
 {¶ 4} On April 27, 1949, Arthur and Armel Rose quit claimed a parcel of the parent property to Dewey and Elma Bradford. The 1949 conveyance did not include a survey.
 {¶ 5} On May 20, 1962, licensed surveyor, Virgil Eberly, performed a survey on the remaining property owned by Arthur and Armel Rose and the surrounding areas. In the 1962 survey, Eberly depicted the .30 acre, triangular area of property which is now in dispute, as being owned by Arthur and Armel Rose.
 {¶ 6} On October 12, 1971, Dewey and Elma Bradford transferred their parcel to Sandra Kinney. Sandra Kinney believed she owned the .30 acres in dispute and proceeded to place two trailers in the area. In the deed to Sandra Kinney, the deed description upon transfer used the exact same terminology as the deed granted from *Page 3 
the Roses to the Bradfords. Furthermore, no survey of the property was performed as part of the conveyance.
 {¶ 7} Over the course of several years, the Roses conveyed several additional parcels of the parent property.[1]
 {¶ 8} On May 26, 1983, R.L. Daniels, a licensed surveyor, completed a survey of the remaining property owned by the Roses and the surrounding areas. In the survey, which deferred to the prior 1962 Eberly survey, the Daniels survey showed the .30 acres in dispute as remaining and being owned by the Roses.
 {¶ 9} On June 14, 1983, Arthur and Armel Rose conveyed their remaining portion of the parent property to Floyd and Janet Kennedy. The parcel descriptions for the Kennedy conveyance were derived from the survey performed by licensed surveyor R.L. Daniels in May of 1983 and thereby continued to indicate that the Kennedys owned the .30 acres in dispute. The remaining parcels conveyed to the Kennedys ran adjacent to the property owned by Sandra Kinney. The 1983 Daniels survey was filed with the deeds transferring the remaining parcels from the Roses to the Kennedys.
 {¶ 10} On August 24, 1998, Sandra Kinney conveyed her interest in her parcel of the parent property to her daughter, Barbara Hill. The property description for the conveyance was based on the Daniels survey and therefore excluded the .30 acres of property in dispute. *Page 4 
 {¶ 11} Believing that she owned the .30 acres now in dispute, on November 12, 1998, Barbara Hill, by and through her counsel, sent a letter to Floyd and Janet Kennedy advising them that she had recently purchased the real estate adjacent to their property. She further requested that the Kennedys remove a mobile home and trailer on the western portion of the .30 acres. Ms. Hill stated that if the property were not removed within ten days it would be considered abandoned.
 {¶ 12} On December 28, 1998, the Kennedys sent a letter, by and through counsel, to Barbara Hill disputing the ownership of the .30 acres. Specifically, the letter stated that the Kennedys, with the assistance of the Perry County Sheriffs Department, had performed a "walk off" of the property using a surveyor's wheel. Furthermore, the letter stated that the Hills had situated a trailer and other property on .30 acres of land owned by the Kennedys and requested the Hills to remove the property. Finally, the letter stated that "this is a problem that your clients created because of their failure to review the deeds and survey of the property."
 {¶ 13} It appears that as a result of the dispute, Barbara Hill determined that the survey performed by R.L. Daniels, in May of 1983, was incorrect and therefore, the property description in her deed, recorded on August 24, 1998, as DR 217/581, was also incorrect. As a result on September 1, 1999, Sandra Kinney by way of quit claim deed re-conveyed her property to Barbara Hill using the original property descriptions set forth in the original deed conveying the property from the Roses to the Bradfords in 1949 and from the Bradfords to Sandra Kinney in 1971.
 {¶ 14} Between 1998 and 1999, a storage building owned by the Kennedys, which was situated on the .30 acres in dispute, caught fire from sparks created as *Page 5 
Charles Hill was burning brush nearby. As a result, the Kennedys lost the storage facility and the personal property contained therein.
 {¶ 15} On September 4, 2003, the Oxford Mining Company conveyed property to Barbara Hill. (Deed recorded in Volume 301, page 2348). The land conveyed was adjacent to property already owned by Barbara Hill. Prior to the conveyance, Barbara Hill hired Charles Harkness, a licensed surveyor to survey the surrounding property. In the survey, Harkness used descriptions of the original parent property owned by the Roses and the conveyance records from the Roses to the Deweys to ascertain that the .30 acres of property in dispute was owned by Barbara Hill.[2]
 {¶ 16} The overlapping of property descriptions between the Eberly/Daniels surveys and the Harkness survey created a question of title to the .30 acres between the Kennedy and Hill properties. Furthermore, the parties continued to dispute ownership rights. As a result, on October 30, 2003, Floyd Kennedy, Janet Kennedy and Robert Dewey filed a complaint for declaratory judgment or to quiet title and property damages, against Charles Rose, Jane Doe, Barbara Hill and Charles Hill. Plaintiffs Floyd and Janet Kennedy, in pertinent part, stated that a "justifiable controversy" existed over the location of boundary lines between the real property owned by the Kennedys and the real property owned by Barbara Hill. The Kennedys further moved the court to reimburse them for damages to their property situated on the real estate in an amount not less than $6,000.00. Barbara Hill filed a counterclaim for adverse possession.
 {¶ 17} On March 24, 2004, in preparation for the litigation, the Kennedys hired Brian Smart, a licensed surveyor, to survey the surrounding property. As part of his preparation, Brian Smart deferred to the surveys performed in 1962 (Eberly) and 1983 *Page 6 
(Daniels) to reach the conclusion that the .30 acres in dispute belonged to the Kennedys.[3]
 {¶ 18} The matter proceeded to a trial before the bench on March 8, 2007.[4] During the trial, witnesses for the Plaintiff included licensed surveyor, Brian Smart, Janet Kennedy, Floyd Kennedy, Norma Perani, Earl Perani and Robert Dewey. Witnesses for the defense included licensed surveyor, Charles Harkness, and defendants, Barbara Hill and Charles Hill.
 {¶ 19} On April 2, 2007, the trial court filed a Decision and Judgment. In the judgment, the court stated that it had carefully considered the testimony of registered surveyors, Brian Smart and Charles Harkness, and the testimony of other witnesses. The trial court held in pertinent part as follows:
 {¶ 20} "The Court finds that a preponderance of the evidence establishes that the legal description by which the Defendant Barbara Hill acquired title to the property in question identifies said property sufficiently to make a valid conveyance. The Court further finds that the survey by Charles R. Harkness establishes the boundary lines of the disputed property according to the description in the deed from Sandra Kinney to Barbara Hill, dated September 1, 1999, recorded in Vo. 256, Page 49, Official Records, Perry County, Ohio. The Court hereby declares that Barbara Hill is the owner of the property as surveyed and described by the survey of Charles R. Harkness."
 {¶ 21} The trial court further found in favor of the Kennedys with regard to the damage to their property. Accordingly, the trial court ordered Charles and Barbara Hill to *Page 7 
reimburse the Kennedys as follows: $1,250.00 for the value of the storage building and $1,050.00 for the value of the personal property destroyed in the storage building.
 {¶ 22} It is from this decision and judgment that the appellants now seek to appeal setting forth the following assignments of error:
 {¶ 23} "I. THE TRIAL COURT ERRED IN AWARDING APPELLEE THE REAL ESTATE IN QUESTION.
 {¶ 24} "II. THE TRIAL COURT ERRED IN AWARDING DAMAGES IN THE AMOUNT OF ONLY $2,300.00."
 I {¶ 25} In the first assignment of error, appellants generally argue that the trial court erred in determining that the disputed .30 acre property was owned by the appellee. More specifically, appellant argues that the trial court improperly relied on the testimony of appellee's surveyor, Charles Harkness. Appellants argue that Harkness failed to follow the established standards for boundary surveys, specifically for the research and investigation of property boundaries, in determining that Barbara Hill owned the property in dispute.
 {¶ 26} Essentially, the appellant argues that appellee's survey by surveyor, Charles Harkness, was not reliable because it (1) failed to defer to the boundary lines depicted in the 1962 and 1983 pre-existing surveys of the properties; and (2) failed to follow guidelines for the use of monuments to determine property boundaries. We disagree.
 {¶ 27} When boundary line disputes exist between adjacent property owners and the deed descriptions do not resolve the conflict, the dispute must be resolved in *Page 8 
accordance with the minimum standards for boundary surveys. The Ohio State Board of Registration for Professional Engineers and Surveyors has established minimum standards for boundary surveys. See Ohio Adm. Code 733-37. Ohio Adm. Code 4733-37-01 indicates that the rules adopted by the board are "intended to be the basis for all surveys relating to the establishment or retracement of property boundaries in the state of Ohio."
 {¶ 28} Regarding research and investigation, Ohio Adm. Code 4733-37-02
provides:
 {¶ 29} "(A) When the deed description of the subject property and the deed descriptions of adjoining properties do not resolve the unique locations of the corners and lines of the property being surveyed, the surveyor shall consult other sources of information in order to assemble the best possible set of written evidence of every corner and line of the property being surveyed. These sources include, but are not limited to: records of previous surveys, deed descriptions of adjacent properties, records of adjacent highways, railroads and public utility lines; also include subdivision plats, tax maps, topographic maps, aerial photographs, and other sources as may be appropriate.
 {¶ 30} "(B) After all necessary written documents have been analyzed, the survey shall be based on a field investigation of the property. The surveyor shall make a thorough search for physical monuments, analyze evidence of occupation and confer with the owner(s) of the property being surveyed. In addition, the surveyor shall, when necessary, confer with the owner(s) of the adjoining property and take statements."
 {¶ 31} Appellant argues that the trial court erred in relying on appellee's survey which used as its beginning, to determine the property boundaries, the deed description *Page 9 
for the parent property in 1946 and the deed description of the senior conveyance from the Roses to the Bradfords in 1949. Appellant argues that the certified surveys of the Roses' remaining property and surrounding areas performed in 1962 and 1983 should be controlling as to the property boundaries. We disagree.
 {¶ 32} The law concerning the establishment of property boundaries, the propriety of a conducted survey and what priority that survey must be given in relation to prior and subsequent surveys has been extensively discussed in Broadsword v. Kauer, (1959), 161 Ohio St. 524,120 N.E. 2d 111 and Sellman v. Schaaf,( 1971), 26 Ohio App. 2d 35,269 N.E. 2d 60. In circumstances where a survey of a parcel of land has been made by a certified surveyor and a plat is made and duly recorded, the monuments placed or ascertained, and boundary lines established by such monuments in the survey, are thereafter controlling. Sellman v.Schaaf, Supra. In a subsequent survey, the re-surveyor should not run new lines, even where the first are full of errors. Sanders v. Webb
(1993), 85 Ohio App. 3d 674, 680, 621 N.E. 2d 420, 424. It is the duty of the second surveyor to find where corners were placed, right or wrong, where they can be found, and then relocate the original lines and corners at the places established. Id. Only when it becomes impossible for a second surveyor to find where the first boundaries were established in the first survey, does the second survey turn to courses, distances, and still existing monuments to determine the boundaries.Sellman supra at 41-42.
 {¶ 33} In Sellman, the court held that an original survey of a parcel must be used to define boundaries of disputed lots. The court further held that the primary function of a second surveyor is to find where the boundaries were established by the first *Page 10 
surveyor. Specifically, the court stated that "only where that becomes impossible to accomplish does the second survey turn to the course, distances and still existing monuments to determine boundaries.Sellman supra at 41-42.
 {¶ 34} Upon review we find that while the other surveys are required by surveying protocol to be considered, they were not necessarily controlling pursuant to the circumstances in this case.
 {¶ 35} In the case sub judice, unlike Sellman, the parent property (wholely owned in 1946 by the Roses), from which the disputed lot was transferred in 1949, was not surveyed. Additionally, prior to the conveyance of the parcel from the Roses to the Bradfords, the property was not surveyed. Therefore, there was never a survey performed of the parcel of property which was senior in conveyance. The only available surveys were subsequently performed in 1962 by Virgil Eberly and the survey performed in 1983 by R.L.Daniels to determine what property remained which was owned by the Roses and which could be conveyed by them to the Kennedys.
 {¶ 36} However, the 1962 survey was not performed to establish the actual boundaries of the original parent parcel or to determine the portion that was conveyed in 1949 to the Bradfords. In addition, the 1983 survey only served to incorporate the 1962 boundaries. Finally, the Daniels survey made boundary determinations based on artificial monuments, i.e. iron pins, which were placed on the property by Eberly in 1962, and which were not in existence in either 1946 or 1949. Therefore, based upon the evidence presented it was reasonable for the trial court to give deference to the Harkness survey which used the original deed description of the parent property and the deed description for the conveyance in 1949 to first establish the boundary lines of the *Page 11 
property for the most senior conveyance from the parent parcel, rather than to much later surveys which did not take the parent property boundaries into consideration and the language of the original 1949 conveyance into consideration.
 {¶ 37} We shall next address appellant's argument that the trial court erred in relying on the appellee's survey because the appellee's surveyor failed to follow guidelines for the use of monuments in determining property boundaries.
 {¶ 38} As in this case, if the assessment of courses, distances and monuments is necessary to establish boundary lines, all words and descriptions used in the deed must be harmonized and given effect if possible and none of them should be disregarded if there is a reasonable way of using them. 12 Am. Jur. 2d Boundaries § 2. Additionally, the general order of priority for monuments in determining property boundaries is as follows: natural boundaries, artificial marks, adjacent boundaries, course and distance, and area. Broadsword v. Kauer (1959),161 Ohio St. 524, 120 N.E.2d 111. The identity and validity of a given monument, where in question, must be established by a preponderance of the evidence. Sellman v. Schaaf (1971), 26 Ohio App. 2d 35,269 N.E.2d 60. Furthermore, boundaries are defined by lines. Points and corners merely form the termination and give direction to the boundary lines.Reed's Lessee v. Marsh (1837), 8 Ohio 147.
 {¶ 39} Appellee's surveyor, Charles Harkness, testified that he had experience surveying property where there have been deeds which are old, vague and ambiguous.T. 155-156. He testified that there are few surveyors willing to work on these types of properties because these land disputes end up in court. T.156 He testified that he performed such a property survey for Barbara Hill. *Page 12 
 {¶ 40} Harkness testified that the Hill property was originally part of the premises referred to as the parent parcel and that the first conveyance of what is now the Hill property occurred in 1949. He further testified that the records reflect that this was the first conveyance of property from the parent parcel and therefore senior in priority. T.159.
 {¶ 41} Harkness testified that he first took the 1949 legal description and attempted to place it on the ground. Initially, he recreated the boundaries for the parent parcel and then looked to extract the Bradford parcel.T.162. He testified that the deed set forth three call points indicating that the property in question was triangular.
 {¶ 42} Harkness stated that in order to determine the starting point, he attempted to find monumentation that would have existed in 1949. He testified that in order to determine monumentation you must research how people use property and particularly how this property was used in 1949.T.165. As a result he was able to determine a place of beginning at an area that may have been "occupied" and/or where there is physical presence of a railroad. T. 163-164. Harkness then traced the next call along the line of the parent tract to a point west of a small ravine beyond McCluney Creek. Harkness testified that he traced the next call point in an easterly direction. Harkness admitted that the term easterly could be interpreted in several different ways. However, he testified that if you start from the place of beginning following the parent tract thereby creating a 90 degree angle and a northerly line until you create a triangle large enough to contain approximately one acre of land you can determine the easterly direction of the triangular property. T.167 and 170. Harkness testified that the last call of the triangle fell within the area of Tunnel Hill Road but that the vast majority of decisions *Page 13 
made in Ohio and other states transfer property to the center of a road unless otherwise indicated.T.176. Finally, Harkness testified that the Hill deed description (taken verbatim from the Bradford conveyance in 1949), provided enough information to describe a three sided parcel containing approximately one acre of land which included the .30 acres of property in dispute.T.172.
 {¶ 43} We find that the testimony of Charles Harkness established that he conducted his survey in accordance with surveying standards. Harkness researched and utilized other sources of information to determine the intent of the parties in creating the original boundary lines consistent with Ohio Adm. Code 4733-37-02. Furthermore, he relied on feasible monumentation both natural and artificial. Finally, he took into account common property usage in 1949 and the area of the property in question to plot a triangular parcel of approximately one acre in area which he testified belonged to Barbara Hill. For these reasons we find that the trial court did not err in relying on the testimony and the survey conducted by surveyor, Charles Harkness.
 {¶ 44} Because it was not error for the trial court to rely on the Harkness survey, which established that the .30 acres in question was part of the original transfer from the parent parcel, it was not error for the trial court to determine that Barbara Hill, who now owns the property transferred from the parent parcel in 1949, owns the .30 acres in dispute. Surveys done in 1962 and 1983 were done on the remaining portion of the parent property after the parcel containing the .30 acres was transferred to the Bradfords in 1949.
 {¶ 45} Accordingly, appellant's first assignment of error is hereby overruled. *Page 14 
 II {¶ 46} In the second assignment of error the appellant argues that the trial court erred in only awarding a percentage of the requested damages amount. We disagree.
 {¶ 47} Evaluating evidence and assessing the credibility of that evidence are the primary functions of the trier of fact. Yuhasz v.Mrdenovich (1992), 82 Ohio App.3d 490, 492, 612 N.E.2d 763, 764. In judging the evidence in support of a trial court's judgment in a civil case, "`[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'"Id., quoting C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.
 {¶ 48} At trial, the court was not presented with values for each of the items which the Kennedys claimed was destroyed or damaged in the storage shed fire. Janet Kennedy testified that the storage shed contained Christmas dishes, a vase, children's school handprints, cameras, an old-fashioned picture and plates, "a lot of things my dad gathered up for me," two washers, a stand or two, a black lamp, an old antique cookie jar, pottery and "a statue of a black woman laying holding a goose out in front of her like she was swimming" T.89-90.
 {¶ 49} Floyd Kennedy testified that the storage building contained "boxes that we had accumulated from a night club that had big speakers," a "foldaway bed," a couch and a chair. He estimated the gross value of all the personal property as being around six thousand ($6,000.00) dollars. T. 132-133.
 {¶ 50} On cross-examination, Floyd Kennedy testified that the storage building was actually a box bed from a truck. T.140 He testified that he and his wife paid *Page 15 
approximately one thousand dollars for the truck bed and two hundred and fifty dollars to have it moved onto the property. T.141. It was further established that in a prior deposition he had valued the property inside the truck as being worth one thousand and twenty-five dollars. T.142.
 {¶ 51} Based upon the testimony we do not find that the trial court erred in awarding reimbursement in the amount of $1,250.00 for the value of the storage building and $1,050.00 for the value of the personal property destroyed in the storage building. Accordingly, appellant's second assignment of error is not well taken and is hereby overruled.
 {¶ 52} The judgment of the Perry County Court of Common Pleas is hereby affirmed.
Edwards, J. Hoffman, P.J. and Wise, J. concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Perry County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] On September 5, 1972, Arthur and Armel Rose conveyed a parcel of the parent property to Samuel and Kathy Stickdorn. The general warranty deed included the survey by Virgil Eberly. This 1.10 acre of land was subsequently transferred to Floyd and Janet Kennedy. (Deed recorded in Volume 218, page 538) On April 2, 1974, Arthur and Armel Rose conveyed .20 acres of the parent parcel to Floyd and Janet Kennedy. (Deed Recorded in Volume 218, page 536).
[2] Charles Harkness Survey, dated April 4, 2002, for Sec:#31, Twp:#14, R:#14. (Trial Exhibit 9).
[3] Brian Smart Survey, dated March 24, 2004, as "Plat Survey for Floyd Kennedy being part of the Northwest Quarter of the Southwest Quarter of Section 31, Township 14, Range 14, of the Congress Land East of the Scioto River, Harrison Township, Perry County, Ohio. (Trial Exhibit 10)
[4] The matter proceeded to trial as to the issues between the Kennedys and Barbara Hill. All the other matters were resolved prior to trial. *Page 1