[Cite as *Checovich v. Cochran*, 2018-Ohio-1586.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| MICHAEL E. CHECOVICH, ET AL | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Craig R. Baldwin, J. |
| Plaintiffs-Appellees | : | Hon. Earle E. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 17 CA 24 |
| JAMES COCHRAN, ET AL | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:    Civil appeal from the Guernsey County
Court of Common Pleas, Case No.
17CV000045


JUDGMENT:    Affirmed


DATE OF JUDGMENT ENTRY:    April 20, 2018


APPEARANCES:

For Plaintiffs-Appellees                     For Defendants-Appellants

C. KEITH PLUMMER                        MARK STUBBINS
139 West Eighth Street                      59 North Fourth Street
P.O. Box 640                                    P.O. Box 488
Cambridge, OH 43725-0640              Zanesville, OH 43702-0488

*Gwin, P.J.*

{¶1} Appellant appeals the October 10, 2017 and October 23, 2017 judgment entries of the Guernsey Court of Common Pleas granting summary judgment to appellees.

*Facts & Procedural History*

{¶2} The real property at issue in this case was originally owned by Bedway Coal Company ("Bedway"). On July 6, 1992, Bedway transferred 47.737 acres out of the parent parcel to Bruner Land Company ("Bruner"). The transfer to Bruner was made as a result of a survey performed by Russel Neitzelt ("Neitzelt"). Two days later, on July 8, 1992, Bedway transferred 101.728 acres out of the parent parcel to Martin Yoder ("Yoder"). The transfer was made as a result of a survey performed by the same surveyor, Neitzelt. The 101.728 acre tract was divided in half and appellees Michael and Elaine Checovich own 51.536 acres of this tract. The 47.737 tract is now owned by appellant James Cochran.

{¶3} In the deed, Neitzelt described the property from Bedway to Bruner as being 775.46 feet from a point in the northern property line consisting of 47.73 acres. Two days later, a deed was filed in which Neitzelt described the property from Bedway to Yoder in a manner that reflected an iron pin two hundred feet shorter than the 775.46 feet described in the Bedway to Bruner deed. The two hundred foot discrepancy in the two deed descriptions means that ownership of approximately twelve acres of the real estate is disputed.

{¶4} On February 1, 2017, appellees Michael and Elaine Checovich and appellees John and Marcia Fuchs filed a complaint to quiet title against appellant James

Cochran. In the complaint, appellees allege the Checovichs' are the owners of the real estate parcel 28-00070-002 acquired via warranty deed on August 15, 2008. Further, that appellees John and Marcia Fuchs are the owners of real estate parcel 28-00316.00 acquired via a general warranty deed on October 4, 2000. The complaint avers appellant James Cochran is the owner of real estate parcel 28-0000079.001 acquired via a quit claim deed on June 15, 2011. The complaint states the properties of the Checovichs', the Fuchs', and Cochran adjoin one another and share various boundaries.

{¶5} The complaint further avers that on or about August 29, 2016, Gary D. Saling ("Saling") of Spilker Surveying conducted a survey of Cochran's real estate for Cochran. Further, that on January 8, 2017, Thomas Wayne Taylor ("Taylor") of East Ohio Surveying conducted a survey of the real estate at issue for appellees. The complaint alleges the surveys are in conflict with regards to a twelve (12) acre area of land located on the eastern border of the Checovich property, the northern border of the Fuchs property, and the western border of the Cochran property.

{¶6} The complaint includes two causes of action, trespass and quiet title. Appellees requested the trial court quiet title of the twelve-acre parcel to them and declare them as the true and rightful owners of the twelve-acre parcel of property.

{¶7} Cochran filed an answer to the complaint on February 15, 2017. Cochran also filed a counterclaim, alleging trespass and quiet title claims against appellees. Cochran requested the twelve-acre parcel be transferred to him via quiet title.

{¶8} On September 14, 2017, Cochran filed a motion for summary judgment. He argued the court should only consider the most senior conveyance from the parent parcel in order to fix the boundary and should not consider an iron pin placed by Neitzelt, as

monuments should only be relied upon when deeds have been analyzed and do not resolve the conflict. Cochran urged the court to adopt the "senior rights theory" adopted in other states, including Michigan, Kentucky, and Maryland.

{¶9} Appellees filed their own motion for summary judgment on September 15, 2017. Appellees also filed a memorandum contra to Cochran's motion for summary judgment on September 28, 2017. Appellees argued the Saling survey did not consider all relevant items; the monuments in this case are controlling; and the original Neitzelt survey is consistent with the rest of the surveys and with where all properties subject to this action are encompassed. Appellees also asserted that the Saling survey would place a portion of the Fuchs' home on the property of Cochran and that the Fuchs' have been living there full-time since 2000. Further, that the exhibits show there is an old road that borders the properties that was relocated consistent with the current boundaries. In addition to the Saling and Taylor surveys, attached as an exhibit to appellees' motion for summary judgment is the survey of Jack Hamilton ("Hamilton") dated July 24, 1996, that places the twelve (12) acres at issue inside the appellees' property line.

{¶10} On September 28, 2017, Cochran submitted a supplemental affidavit of Saling. In the affidavit, Saling states that while his survey does go through the Fuchs' property, it does not place a portion of the Fuchs home on the property of Cochran; rather, it only places a portion of the Fuchs driveway on the Cochran property. On October 5, 2017, appellees filed a notice of correction of factual statements contained in their motion for summary judgment. The notice of correction states the affidavit of Saling, "correctly stated that the Saling survey takes a portion of the Fuchs' driveway," not a portion of their home.

{¶11} The trial court issued an entry on October 10, 2017. The trial court found that in construing the language and legal description of the two deeds, it was unable to resolve the conflict based upon the deed descriptions themselves. The trial court found, pursuant to *Kennedy v. Rose*, 5th Dist. Perry No. 07-CA-00006, 2008-Ohio-3929, when boundary line disputes exist between adjacent property owners and the deed descriptions do not resolve the conflict, the dispute must be resolved in accordance with the minimum standards for boundary surveys. The trial court then reviewed the minimum standards for boundary surveys provided by the Ohio State Board of Registration for Professional Engineers and Surveyors encompassed in Ohio Administrative Code Chapter 4733-37, including reviewing the physical monuments. The trial court found Neitzelt placed an iron pin at the boundary line and the pin is dispositive of the issues in the case. Further, that in his survey, Saling relied solely on the language provided in the description of the property in the Cochran deed and did not take into account any of the physical monuments.

{¶12} The trial court granted appellees' motion for summary judgment and denied Cochran's motion for summary judgment. The trial court ordered appellees' attorney to submit a proposed entry within fourteen days.

{¶13} On October 23, 2017, the trial court issued a judgment entry consistent with its October 10, 2017 entry. The trial court granted appellees' motion for summary judgment and denied Cochran's motion for summary judgment. The trial court declared the disputed twelve acres at issue to be the respective property of the Checovichs' and the Fuchs'. The trial court quieted titled of the twelve acres at issue to appellees and issued a permanent injunction in favor of appellees.

{¶14} Appellant Cochran appeals the judgment entry of the Guernsey County Court of Common Pleas and assigns the following as error:

{¶15} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEES MICHAEL E. CHECOVICH, ET AL., AND THEREBY QUIETING TITLE TO THE DISPUTED 12 ACRES IN FAVOR OF APPELLEES AND ISSUING A PERMANENT INJUNCTION, BASED ON A REVIEW OF THE PHYSICAL MONUMENTS, RATHER THAN ON THE PRINCIPLE OF SENIOR RIGHTS."

*Summary Judgment Standard*

{¶16} Civil Rule 56(C) provides, in pertinent part:

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

{¶17} A trial court should not enter summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts. *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981). The court may not resolve any ambiguities in the evidence presented. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984). A fact is material if it affects the outcome of the case under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶18} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court. *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). This means we review the matter de novo. *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶19} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim. *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist. *Id.* The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts. *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

I.

{¶20} In his assignment of error, appellant contends the trial court erred in granting summary judgment in favor of appellees. Appellant urges this Court to adopt the theory of "senior rights" as several courts in other states have done. Pursuant to this theory, a later or "junior" grant yields to an earlier "senior" grant. Thus, based on this principle, the Bruner deed controls in this case. Appellant further argues the deed descriptions at issue do resolve the boundary line dispute and are not in conflict. Appellees contends the trial court correctly applied the well-settled law in Ohio. We agree with appellees.

{¶21} In this case, we deal with a boundary dispute between adjoining landowners. As this Court has previously stated in *Kennedy v. Rose*, 5th Dist. Perry No. 07-CA-00006, 2008-Ohio-3929, "when boundary line disputes exist between adjacent property owners and the deed descriptions do not resolve the conflict, the dispute must be resolved in accordance with the minimum standards for boundary surveys." The Ohio State Board of Registration for Professional Engineers and Surveyors has established minimum standards for boundary surveys. See Ohio Adm. Code Chapter 4733-37. Ohio Administrative Code 4733-37-01 indicates the rules adopted by the board "are intended to be the basis for all surveys relating to the establishment or retracement of property boundaries in the state of Ohio."

{¶22} Pursuant to Ohio Administrative Code 4733-37-02(A),

When the deed description of the subject property and the deed descriptions of adjoining properties do not resolve the unique locations of the corners and lines of the property being surveyed, the surveyor shall

consult other sources of information in order to assemble the best possible set of written evidence of every corner and line of the property being surveyed. These sources include, but are not limited to: records of previous surveys, deed descriptions of adjacent properties, records of adjacent highways, railroads and public utility lines; also include subdivision plats, tax maps, topographic maps, aerial photographs, and other sources as may be appropriate.

{¶23} Further, Ohio Administrative Code 4733-37-02(B) states, "after all necessary written documents have been analyzed, the survey shall be based on a field investigation of the property. The surveyor shall make a thorough search for physical monuments, analyze evidence of occupation and confer with the owner(s) of the property being surveyed. In addition, the surveyor shall, when necessary, confer with the owner(s) of the adjoining property and take statements."

{¶24} Appellant first contends the deeds at issue are not in conflict and thus we need not look to the minimum standards as set forth in well-settled Ohio law. We disagree. The deeds at issue, filed only two days apart and made as a result of surveys from the same surveyor, described the property in a manner that resulted in a two-hundred foot discrepancy. Further, multiple surveys conducted based upon these deeds came to different conclusions as to the location of the boundary line. Thus, we find the deeds at issue in conflict. Accordingly, the dispute must be resolved in accordance with the minimum standards for boundary surveys.

{¶25} As stated by the Ohio Supreme Court, "it is well settled that monuments are of prime importance in settling boundary disputes." *Broadsword v. Kauer*, 161 Ohio St.

524, 120 N.E.2d 111 (1954). Further, "generally, in determining boundaries, natural and permanent monuments are the most satisfactory evidence and control all other means of description, in the absence of which the following calls are resorted to, and generally in the order stated: first, natural boundaries; second, artificial marks; third, adjacent boundaries; fourth, course and distance * * *." *Id.*

{¶26} In *Sellman*, the Tenth District held that where a survey of a parcel of land has been made by a certified surveyor and a plat is made and duly recorded, the boundary lines determined by original monuments will "determine the boundaries of the respective lots irrespective of deviation from the course or distance as set forth in the plat." *Sellman v. Schaaf*, 26 Ohio App.2d 35, 269 N.E.2d 60 (10th Dist. 1971); *Kennedy v. Rose*, 5th Dist. Perry No. 07-CA-00006, 2008-Ohio-3929 (holding where a survey of a parcel of land has been made by a certified surveyor and a plat is made and duly recorded, the monuments placed or ascertained, and boundary lines established by such monuments in the survey, are thereafter controlling). "In making a resurvey it is the surveyor's duty to relocate the original lines and corners at the places actually established and not to run independent new lines, even though the original lines were full of errors." *Sanders v. Webb*, 4th Dist. Pike No. 472, 1993 WL 367585 (March 18, 1993).

{¶27} In this case, the Neitzelt survey, made by a certified surveyor, established the boundaries of the properties via an original monument, an iron pin. The parties do not dispute the iron pin was placed on the boundary line by Neitzelt or that these boundaries have been followed since Neitzelt's original survey. Thus, the boundary lines determined by the original monument, the iron pin, will determine the boundaries of the respective lots and it is the duty of a re-surveyor to relocate the original lines and corners

at the places actually established and not to run independent new lines. Both the Taylor and Hamilton resurveys are in line with Ohio Administrative Code Section 4733-37-02, the well-established Ohio case law in *Broadsword* and *Sellman*, and our decision in *Kennedy*.

**{¶28}** Appellant argues since this Court found it was reasonable for the trial court to utilize the Harkness survey in *Kennedy v. Rose*, 5th Dist. Perry No. 07-CA-00006, 2008-Ohio-3929, that the trial court and this Court must utilize the Saling survey in this case because it was the only survey that conforms to the "senior grant" contained in the Bruner deed. However, the *Kennedy* case was not decided on a "senior rights" theory in which a later or junior grant simply yields to an earlier senior grant. Rather, this Court cited to both the *Broadsword* and *Sellman* cases and affirmed the decision of the trial court because we found "the testimony of Charles Harkness established that he conducted his survey in accordance with surveying standards. Harkness researched and utilized other sources of information to determine the intent of the parties in creating the original boundary lines consistent with Ohio Adm. Code 4733-37-02. Furthermore, he relied on feasible monumentation both natural and artificial. Finally, he took into account common property usage in 1949 and the area of the property in question * * *."

**{¶29}** In this case, in his survey, Saling relied solely on the language provided in the description of the property in the Cochran deed. There is no evidence Saling took into account any of the other minimum standards for boundary surveys, including the physical monuments such as the iron pin of Neitzelt, the new road that had been established, or evidence of occupation such as the location of the Fuchs' driveway, a portion of which under his survey would be on Cochran's land. The Taylor survey sets

the boundary at the iron pin found at the original corner capped by Neitzelt, as does the survey by Hamilton in 1996, and these surveys are consistent with the description of Neitzelt.

{¶30} Additionally, another important fact weighing in favor of appellees is that appellees were in possession of the disputed premises when this controversy arose, when this action was instituted, and they have been in possession of the disputed premises for many years; further, appellees exercised rights of ownership and performed acts of dominion on the disputed premises. The parties do not dispute that the Saling survey would place a portion of the Fuchs' driveway on the Cochran property, or that the Fuchs' have been living there full-time since 2000. Further, there is no dispute there is an old road bordering the properties that was relocated consistent with the boundaries established by the Neitzelt iron pin. See *Broadsword v. Kauer*, 161 Ohio St. 524, 120 N.E.2d 111 (1954) (finding the fact that the plaintiff was in possession of the real estate, exercising rights of ownership and performing acts of dominion, creates a rebuttable presumption that he was invested with some right or title in the premises).

{¶31} Based on the foregoing, we find the trial court did not err in granting summary judgment in favor of appellees and quieting title to the disputed twelve (12) acres in favor of appellees.

{¶32} The October 10, 2017 and October 23, 2017 judgment entries of the Guernsey County Court of Common Pleas are affirmed.

By Gwin, P.J.,

Baldwin, J., and

Wise, Earle, J., concur